UNITED STATES of America,
Appellee,

v.

Junito "Junior" MELENDEZ,
Defendant, Appellant.

No. 01–1733.

United States Court of Appeals,
First Circuit.

Argued May 9, 2002.

Decided Aug. 23, 2002.

John H. LaChance for appellant.

Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

Before BOUDIN, Chief Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

BOWNES, Senior Circuit Judge.

A jury convicted Junito "Junior" Melendez of aiding and abetting the distribution of cocaine base, being a juvenile in possession of a firearm, and possession of cocaine base with the intent to distribute. Melendez was sentenced to 135 months of imprisonment. He now contends that the district court erred in denying his motions to suppress and to sever the first two counts of the indictment from the third.[1] He also alleges error in sentencing: specifically, that the district court should have departed downward from the sentencing guidelines due to his minimal or minor role in the crime, and that a prior conviction was improperly double-counted.

We affirm Melendez's conviction. We vacate his sentence, however, due to the district court's error in calculating his criminal history, and remand for resentencing.

---

1. Some of the rulings below were made by a magistrate judge, others by the district court judge. For simplicity's sake, we do not distinguish between the two, but rather refer to the findings and determinations below as those of the district court.

## I. BACKGROUND

The district court found the following facts: During the spring and summer of 1997, law enforcement agents conducted an undercover operation into drug dealing in the Worcester, Massachusetts, area. On July 16, 1997, Webster Police Officer Stephanie Healy, acting in an undercover capacity, paged Juan (also known as "John") Melendez to arrange the purchase of one ounce of cocaine base. Juan Melendez is the older brother of the defendant. Healy had obtained Juan's pager number during an earlier purchase of crack cocaine at Merrifield Street in Worcester. Juan returned Healy's call, and the two arranged for Healy to purchase one ounce of crack cocaine from him the next day at his home in Worcester.

On July 16, 1997, Healy paged Juan to confirm that the drug transaction would take place that day. This time, it was the defendant who returned the page in a telephone call recorded by Healy. Healy had never spoken to Junito Melendez before, but after Healy explained that she was confirming that her friend was going to meet "John" to buy one ounce at 2 p.m. that day, Junito Melendez identified himself as John's brother. He told Healy that he could get "it," and that either he or his brother would be at Merrifield Street to consummate the drug deal.

Following the telephone call between Healy and Melendez, Special Agent Michael Boyle of the Drug Enforcement Administration (DEA) and Trooper Denise Farrell of the Massachusetts State Police, both acting in an undercover capacity and wearing concealed monitoring devices, went to 53 Merrifield Street in Worcester. Farrell bought one ounce of crack cocaine in a plastic baggie from Juan Melendez for

$800. The police did not observe Junito Melendez at Merrifield Street either at that time or during any additional purchases made from Juan Melendez's group.

On September 23, 1997, following the return of an indictment, Juan Melendez was arrested pursuant to a warrant. The same day, DEA and other law enforcement agents executed a federal search warrant at the third floor of 53 Merrifield Street in Worcester, looking for controlled substances or contraband. Inside a bedroom in the apartment at 53 Merrifield Street they found Junito Melendez, who said he lived there. Melendez was searched, and the agents seized a pager and $685 in cash from him.

The agents also searched the bedroom in which Melendez was standing when they entered. In the ceiling of the bedroom, they found marijuana and two firearms. After the search, law enforcement officers arrested Melendez, who was a juvenile at the time.

Two years later, on April 14, 1999, the United States filed an information against Junito Melendez as a juvenile, charging him in connection with the 1997 drug transaction and the resulting search. The next day, law enforcement agents arrested Melendez, pursuant to a warrant, on the porch at 96 Southgate Street in Worcester. The agents had information that Melendez had been living at that address with his mother, Geraldine Melendez.

Within approximately two hours of Melendez's arrest, DEA Special Agent Jean Drouin, Worcester Police Officer Miguel Lopez and Detective Brian Green returned to 96 Southgate Street. The officers asked Ms. Melendez if they could "look around" the bedroom used by Melendez.[2]

---

**2.** The evidence showed that Melendez kept personal items in his bedroom at his mother's residence and frequently stayed there, but did not always sleep there. There is no challenge

After telling the officers that she did not want her house "torn up," Ms. Melendez allowed them into her son's bedroom. As Ms. Melendez was leaving for work, one of the officers asked her if it was okay if they looked through the room after she left. She responded in the affirmative. Ms. Melendez called her brother and asked him to come over to her apartment. Ms. Melendez's neighbor and baby-sitter, Paulita Toney, was also present during the search.

In the closet of the bedroom, Agent Drouin found and seized a firearm, which was wrapped in a white towel and sitting on top of a plastic container. Officer Lopez searched the center area of the bedroom, where he saw a speaker with a detached cover and a woofer held in place with a screw. Officer Lopez removed the woofer from the speaker. Inside the wooden frame of the speaker, he found a white packet containing crack cocaine.

After finding the crack cocaine and the handgun, the officers spoke with Ms. Melendez by telephone at her work and told her what they had found. The officers asked for and received her permission to search the remainder of the apartment. After a more thorough search, no additional contraband was found.

On August 5, 1999, a federal grand jury returned a two-count indictment against Junito Melendez charging him (1) as a juvenile with delinquency by virtue of having committed a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, aiding and abetting the distribution of cocaine base on July 19, 1997, and (2) as a juvenile in possession of a firearm.

On January 12, 2000, a superseding indictment was returned, adding a count of possession of cocaine base with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). This count charged Melendez, as an adult, with regard to the events of April 15, 1999. On May 17, 2000, Melendez filed a motion to suppress evidence of the cocaine base and firearm that was the basis for the newly added count. After an evidentiary hearing, the court denied the motion. It held that Ms. Melendez's consent to the search of the bedroom was voluntary, that she had the authority to consent to the search of the speaker, and that the search did not exceed the scope of her consent. The court found that Ms. Melendez stated, in response to the officers' request to look through her son's bedroom, "Go ahead, fine, just do it," and called her brother to come over to the apartment while she left for work.

On November 27, 2000, Melendez filed a motion to sever the first and second counts from the third on the ground that they were improperly joined under Fed. R.Crim.P. Rule 8 and that the joinder was unfairly prejudicial to Melendez under Fed.R.Crim.P. 14. The court denied this motion.

A three-day jury trial began on December 18, 2000. Melendez was convicted of each count of the superseding indictment. On April 19, 2001, Melendez was sentenced to 135 months of imprisonment, five years of supervised release, and a $225 special assessment.[3] This appeal followed.

## II. *DISCUSSION*

### A. *Motion to Suppress*

Melendez contends that the district court erred in determining that his mother

---

to Ms. Melendez's authority to consent to the search of the bedroom in this challenge.

3. Melendez was sentenced to 135 months on the first and third counts and twelve months on the second count, all to be served concurrently.

consented to the search that yielded the crack cocaine in the speaker. He points to the district court's findings that the officers asked his mother to allow them to "look around" his room, and that Ms. Melendez told the officers that she did not want her apartment "torn up." He contends that the phrase "look around" suggests a mere visual inspection of the bedroom, precluding disassembling items to search for hidden contents, and that the officers exceeded the scope of Ms. Melendez's consent when they unscrewed and removed the woofer of the speaker and looked inside.

■ As a general matter, we review the district court's denial of Melendez's suppression motion *de novo*, and its factual findings for clear error. *United States v. Hawkins*, 279 F.3d 83, 85 (1st Cir.2002). As this court noted in *United States v. Turner*, 169 F.3d 84, 87 n. 4 (1st Cir.1999), circuits are divided on the question of the appropriate standard of review with respect to scope of consent. *Id.* (Fifth Circuit reviews the scope of consent *de novo*, Eighth Circuit reviews for clear error). This circuit has not conclusively weighed in on the issue. *Id.* As in *Turner*, however, we need not resolve it today, because the result in this case is the same regardless of the standard of review applied. *See id.*

■ "[O]ne of the specifically established exceptions to the [Fourth Amendment] requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "A consensual search may not exceed the scope of the consent given." *Turner*, 169 F.3d at 87. Because a consensual search falls within an established exception to the warrant requirement of the Fourth Amendment, the government bears the burden of prov-

ing that the search was within the scope of the consent. *Id.* at 87 n. 3.

■ We measure the scope of a subject's consent by a test of objective reasonableness: "what would the typical reasonable person have understood by the exchange between the officer and the subject?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "We therefore look beyond the language of the consent itself, to the overall context, which necessarily encompasses contemporaneous police statements and actions." *Turner*, 169 F.3d at 87.

■ Under the specific factual circumstances of this case, we conclude that a reasonable understanding of the officers' phrase "look around" would have encompassed a search. *See United States v. Pena*, 143 F.3d 1363, 1368 (10th Cir.1998) (officer's request to "look in" a motel room reasonably understood to include thorough search of room); *United States v. Gant*, 112 F.3d 239, 242–43 (6th Cir.1997) (reasonable person would understand that officer's request to "look" in bag sought consent to search bag); *United States v. Rich*, 992 F.2d 502, 506 (5th Cir.1993) (request to "look in" or "look through" equivalent to request to search); *United States v. Harris*, 928 F.2d 1113, 1115, 1117 (11th Cir. 1991) (officer within scope of consent to unzip luggage in trunk after permission was given to "look in" car to make sure there weren't any illegal drugs, weapons or contraband).

The finding that Ms. Melendez made certain that a relative was present to observe the officers supports the conclusion that she reasonably understood the officers' request to include a search. Had she understood them to mean that they were merely going to perform a quick visual observation, there would have been no reason to ask her brother to stay and observe.

Similarly, her admonition not to "tear up" the room would not have been necessary unless a search was contemplated.

Moreover, the record indicates that Ms. Melendez told one of the officers, before the search, that they would not find drugs in the room.[4] This further supports the conclusion that the exchange between the officers and Ms. Melendez reasonably indicated that a search of her son's room was contemplated. *See United States v. Coffman,* 148 F.3d 952, 953 (8th Cir.1998) (defendant's statement "Go ahead and look around. You won't find a thing" consented to a full search).

■ Nor did the officers exceed the scope of consent by dismantling the speaker. The district court found that the stereo speaker was not a sealed container and did not bear indicia of an expectation of privacy, and Melendez does not appeal these findings. The speaker was located in the area that Ms. Melendez had allowed the officers to search, and was a place in which the officers could have reasonably suspected drugs to be hidden. *Cf. Pena,* 143 F.3d at 1368; *Gant,* 112 F.3d at 243. Accordingly, no additional authorization to search the speaker was required. *See Jimeno,* 500 U.S. at 252, 111 S.Ct. 1801.

■ In a similar vein, Melendez contends that the officers violated Ms. Melendez's express limitation on the search—i.e., her admonition not to "tear up" her home—when they dismantled the speaker. We disagree. The words "tear up" imply destruction and the use of force. *See* Webster's Third New International Dictionary 2347 (1981) (defining "tear up" as, inter alia, to "destroy by tearing" or "tear

to pieces"). Here, the officer unscrewed one screw and removed the woofer of the speaker, causing no destruction. The parts that the officer dismantled were easily removable and replaceable, and the speaker can be returned to its original condition.

In sum, an objectively reasonable person would believe that Ms. Melendez consented to the search and that a search of the speaker was within the scope of that consent. The district court did not err in holding that the search was consistent with the Fourth Amendment.

**B.** ***Downward Adjustment for Minor Participation***

Melendez also argues that the district court erred in failing to award him a two-level downward adjustment under the sentencing guidelines for being a minor participant in the drug offense described in Count 1, aiding and abetting the distribution of more than nineteen grams of crack cocaine. He contends that his brother John negotiated the sale of cocaine and set the terms of the deal. Melendez's only involvement, he contends, was to assure the undercover officer that the deal would be done even if he had to make the delivery himself, so that his brother would not lose the deal.

■ We review the district court's finding that a defendant is not a minimal or minor participant for clear error. *United States v. Gonzalez–Soberal,* 109 F.3d 64, 73 (1st Cir.1997); *see also United States v. Murphy,* 193 F.3d 1, 8 (1st Cir.1999) (determination whether to apply the role in

---

4. At the suppression hearing, Agent Drouin testified that Ms. Melendez made this statement. The record indicates that Ms. Melendez neither denied nor admitted stating that the officers would not find drugs in her son's room. She testified simply that at the time of the search she knew her son would not keep drugs in the room. The district court made no finding about whether Ms. Melendez made the statement at issue to the officer; it did find, however, that the officer was a more credible witness than Ms. Melendez.

the offense adjustment is "rarely reversed.")

Section 3B1.2 of the guidelines provides for a downward adjustment in the offense level based upon a defendant's mitigating role in the offense:

Based upon the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

A minimal participant is one who "plays a minimal role in concerted activity." U.S.S.G. § 3B1.2, comment (n.3) (2001). A minor participant "means any participant who is less culpable than most other participants but whose role could not be described as minimal." *Id.*

 In seeking a section 3B1.2 adjustment, a defendant "has the burden of proving that he is both less culpable than most others involved in the offense of conviction and less culpable than most other miscreants convicted of comparable crimes." *United States v. Ortiz–Santiago*, 211 F.3d 146, 149 (1st Cir.2000). The relevant inquiry is "whether the defendant was a minor participant in the crime for which he was convicted," not in some broader conspiracy. *United States v. Isienyi*, 207 F.3d 390, 392 (7th Cir.), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532 (2000).

 The evidence adduced at trial adequately supports the district court's finding that Melendez was neither a minimal nor a minor participant in the Count 1 crack cocaine distribution. The telephone call on July 16, 1997, demonstrated that Melendez was both aware of and a willing participant in his brother's drug dealing. During that call, Healy told Melendez that she was calling to confirm that "John" Melendez would be meeting her friend that afternoon because "[h]e's supposed to get her an ounce." Melendez responded, "I can get that." Melendez indicated that for the purposes of the transaction he was interchangeable with his brother: after Healy questioned whether Melendez, rather than his brother, would get the crack for her friend, Melendez said, "Yeah. Whatever, me or him. He'll be there to[o]." Melendez also told Healy that she should ask for him if John was not there and he would get the ounce for her friend.

These facts were sufficient to establish that Melendez was a significant, if not equal, participant in the Count 1 violation. *See United States v. Brandon*, 17 F.3d 409, 460 (1st Cir.1994) (affirming denial of § 3B1.2 adjustment where defendant was less culpable than major participants, but not less culpable than most of defendants and not substantially less culpable than average defendant); *United States v. Osorio*, 929 F.2d 753, 764 (1st Cir.1991) (denying mitigating role adjustment where defendant's participation was not less than average participation in crime). In light of the lenient standard of review, *Ortiz–Santiago*, 211 F.3d at 148–49, we see no error in the district court's failure to make a mitigating role adjustment to Melendez's offense level.

### C. *Criminal History*

Melendez asserts that the district court erred in calculating his criminal history category (CHC), resulting in an incorrect sentence. He states that the court mistakenly assessed separate criminal history points for two juvenile adjudications for the same offense.

The district court calculated Melendez's criminal history as a category IV, based upon seven criminal history points. Included in that calculation was one criminal history point, pursuant to U.S.S.G. §§ 4A1.2(d) and 4A1.1(c), for a delinquency adjudication in Worcester Juvenile Court on December 16, 1996, for distribution of a controlled substance. Also included were two criminal history points, pursuant to U.S.S.G. §§ 4A1.2(d) and 4A1.1(b), for what was purportedly a second delinquency adjudication in Worcester Juvenile Court on April 4, 1997, also for distribution of a controlled substance.

 The government concedes that the district court erred in counting these delinquency adjudications as two separate convictions, and agrees that a remand is appropriate. Because of the double-counting, Melendez had a total criminal history score of 7, which placed him within CHC IV by one point and resulted in a sentencing guidelines range of 135 to 168 months imprisonment. The district court sentenced him at the bottom of the applicable guidelines range. Had the district court properly calculated Melendez's CHC, he would have had a criminal history score of 6, placing him within CHC III and resulting in a guidelines range of 121–151 months imprisonment. Because the error in the calculation of his CHC subjected him to a higher floor of the guidelines range, we vacate his sentence and remand for resentencing to correct the calculation of his CHC and the resulting guidelines range.

### D. *Motion to Sever*

Melendez contends that the district court erred when it denied his motion to sever Counts 1 and 2 of the indictment from Count 3. Specifically, he argues that the counts were improperly joined under Fed.R.Crim.P. 8(a) because they were not sufficiently similar or connected. Even if the counts were properly joined, Melendez says that under Fed.R.Crim.P. 14, he was prejudiced by the failure to sever because a trial on all three counts would subject him to prejudicial spillover, and because he wanted to testify as to one set of charges and not as to the other.

 The standard of review depends on the point contested; here, the Rule 8 claim is primarily one of law, which we review *de novo, United States v. Edgar,* 82 F.3d 499, 503 (1st Cir.1996), while the Rule 14 claim involves application of a general standard to particular facts, such that deference to the lower court is appropriate. *United States v. Baltas,* 236 F.3d 27, 33 (1st Cir.), *cert. denied,* 532 U.S. 1030, 121 S.Ct. 1982, 149 L.Ed.2d 773 (2001).

Melendez's first argument is that Counts 1 and 2, the drug and gun count relating to the July 16, 1997, drug transaction and subsequent search, were improperly joined with Count 3, the drug charge stemming from the consensual search on April 15, 1999. Joinder was improper, he contends, because the charges were not of the "same or similar character." *See* Fed.R.Crim.P. 8(a). He argues that the only similarity between the two sets of charges is that both involve a drug offense, and that this is insufficient to satisfy Rule 8(a).

 Rule 8(a) provides that two or more offenses may be charged in the same indictment if the offenses charged "are of the same or similar character." This provision is "generously construed in favor of joinder." *United States v. Randazzo,* 80 F.3d 623, 627 (1st Cir.1996). "Similar" does not mean "identical," and we assess similarity in terms of how the government saw its case at the time of indictment. *Edgar,* 82 F.3d at 503.

 In this case, Counts 1 and 3 both charged Melendez with possession of a

controlled substance with the intent to distribute it. In both counts, the controlled substance at issue was cocaine base. *See, e.g., United States v. Babbitt,* 683 F.2d 21, 23 (1st Cir.1982) (cocaine transactions on two different dates "are of the same or similar character"); *United States v. Lewis,* 626 F.2d 940, 944–45 (D.C.Cir.1980) (same drug formed the basis for all four charges against defendant; court concluded that the four charges "are of the same or similar character"); *Terry v. United States,* 310 F.2d 715, 715 (5th Cir.1962) (where defendant unlawfully transferred marijuana to same persons on two different dates, joinder is proper since offenses were identical). The statutory violations charged in Counts 1 and 3 were substantially the same, resulting in overlap of legal issues justifying joinder. *See United States v. Arruda,* 715 F.2d 671, 678 (1983). Accordingly, we perceive no error under Rule 8(a).

Second, Melendez contends that the joinder prejudiced him in several ways: by confounding him in presenting separate defenses; by enabling the jury to use the evidence of one crime to infer that he had a criminal disposition; by the cumulative effect of the evidence, which may have led the jury to find guilt where it otherwise would not have; and by preventing him from testifying about Count 3 only, and not Count 1.

 To prevail under Fed. R.Crim.P. 14, a defendant must show that the joinder of offenses here resulted in "actual prejudice," which we define as the "substantial and injurious effect or influence in determining the jury's verdict." *Edgar,* 82 F.3d at 504 (quoting *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986)); *see also* Fed. R.Crim.P. 52(a). Here, Melendez has not made the requisite showing. He has not demonstrated that the jury did not consider each charge separately, or provided sufficient factual support for ⵌhis assertions about separate defenses, spillover, or the cumulative effect of the charges. Rather, he simply states in his brief, "It seems clear from review of the transcript, all of the factors for prejudice exist in this case and that defendant was actually prejudiced by denial of the severance."

We also note that the district court instructed the jury that each count charged a separate offense and that each had to be considered separately, without allowing the verdict on one count to affect the verdict on any other count. *See United States v. Taylor,* 54 F.3d 967, 974 (1st Cir.1995). These instructions "minimized any possible prejudice" from the joinder of the three counts. *United States v. Natanel,* 938 F.2d 302, 308 (1st Cir.1991).

 As to Melendez's claim that the counts should have been severed so that he could have testified as to one and not as to another, we have held that "a defendant may deserve a severance of counts where [he] makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *United States v. Alosa,* 14 F.3d 693, 695 (1st Cir.1994) (internal citations and quotations omitted). To make this showing, however, the defendant must offer "enough information to allow the court to weigh the needs of judicial economy versus the defendant's freedom to choose whether to testify as to a particular charge." *United States v. Jordan,* 112 F.3d 14, 17 (1st Cir.1997) (internal citations and quotation marks omitted). Melendez has not provided sufficient information here.

### III. *CONCLUSION*

We ***AFFIRM*** Melendez's conviction. Because of the error in the calculation of

his criminal history, we *VACATE* his sentence and *REMAND* for resentencing consistent with this opinion.